UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CARLOS SEGURA,

                Petitioner,                         **REPORT & RECOMMENDATION**
                                                                   16 CV 6688 (LDH)(LB)

   -against-

THOMAS GRIFFIN,

                Respondent.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge**

      Carlos Segura petitions this Court, *pro se*, for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2013 New York Supreme Court, Nassau County conviction of five counts of robbery in the first degree, one count of robbery in the second degree, four counts of burglary in the first degree, three counts of unlawful imprisonment in the second degree, two counts of assault in the second degree, and one count of escape in the third degree. This petition was referred to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).[1] For the following reasons, it is respectfully recommended that the petition should be denied.

## BACKGROUND

**I.    The Underlying Crime**

      According to evidence adduced at trial,[2] as Arshad Sumra drove his son to school on the morning of January 19, 2011, he noticed a white sedan following him. (A. Sumra: 858.) Sumra suspected it was an unmarked police car that had taken interest in the dark tints on his windows.

---

[1] This case was originally filed in the Eastern District of New York (Central Islip) and assigned to Judge Azrack and Judge Shields. On March 21, 2019, the case was reassigned to me and Judge Amon, and on May 21, 2019 the case was reassigned to Judge DeArcy Hall.

[2] A jury trial was held between March 4 and March 22, 2013 before the Honorable Angelo Delligatti. References to the criminal trial transcript ("TT"), filed at ECF Nos. 22-25, include the last name of the witness and the corresponding transcript page number(s).

(A. Sumra: 859.) After a few minutes, the car trailed off. Id. Sumra dropped his son off and returned home. Id. When he arrived, he noticed the same white sedan parked in front of his house in North Bellmore, New York. (A. Sumra: 861.) Surprised to find his front door locked, he knocked. When the door opened, petitioner grabbed Mr. Sumra at gunpoint, dragged him into the bedroom, and tied him up alongside his wife, who had blood running down her cheek, as two other men bearing knives, later identified as Gustavo Arroyo and Eduardo Cruz, held his wife down.

Outside, another man later identified as Dario Guerrero, waited in the car – a white Ford Crown Victoria with a police-style spotlight and Pennsylvania license plates. (Weiss: 690; H. Sumra: 1441; A. Sumra: 863.) Inside the house, Cruz grabbed cash and jewelry from Mr. Sumra's coat and demanded to know where he could find more. (A. Sumra: 875.) While Cruz yelled at Sumra, Arshad's son Harris returned home after dropping his sister off at college. (H. Sumra: 1439.) Like Arshad, Harris confronted an assailant at the door, but Harris managed to free himself. (H. Sumra: 1443.) In a panic, he ran into the street and waved down a passerby, Gina Weiss, for help. (Weiss: 690-91; H. Sumra: 1443) As he did so, Arroyo, Cruz, and petitioner ran out of the house and into the waiting car. (Weiss: 690.) Guerrero made a U-Turn and sped away. (H. Sumra: 1444; Weiss: 691). Harris ran back in to the house to check on his parents and called 911 at 9:03 a.m. (H. Sumra: 1447; Petitioner's Brief, Ex. A2[3]: 36.). Harris described four "black men," fleeing in a black Lincoln with tinted windows and New York plates. (Ex. 3; Petitioner's Brief, Ex. A2: 36-8.) At the same time, 9:03 a.m., Gina Weiss also called 911. (Petitioner's Brief, Ex. B: 42; Weiss 692). Weiss described three black men in an "older model white car [with] black tinted windows," and

---

[3] Petitioner attaches his brief and various exhibits in support of his motion under N.Y. Crim. Proc. Law § 440.10 (hereinafter "C.P.L. § 440") to his petition. He labels both the C.P.L. § 440 motion and a transcript of Harris Sumra's 911 call as "Exhibit A." In the interest of clarity, the Court refers to petitioner's motion papers as "Petitioner's Brief, Ex. A1" and to the Sumra 911 call transcript as "Petitioner's Brief, Ex. A2."

2

a "spotlight on the door" that "looked like an unmarked police car." (Petitioner's Brief, Ex. B: 42; Weiss: 692.)

As this transpired, an off-duty New York City firefighter, Andrew Smart drove by the scene. (Smart: 559-60). As Smart witnessed the intruders escape, Mrs. Weiss told him to follow the car and he pursued the vehicle. (Smart: 562-3). At 9:06 a.m., Smart called 911 and explained that he was "following a white Crown Victoria with black tint windows, Pennsylvania tags" with four "pretty dark" occupants and a "police interceptor" on the back. (Petitioner's Brief, Ex. C: 45-6). Smart also read out the license plate number "H-L-K-2-2-5-7" to the operator. (Petitioner's Brief, Ex. C: 45).

Almost immediately, radio transmissions went out to Nassau County police officers in the area. (Lezamiz: 602-3). Sergeant John Lezamiz spotted a vehicle matching the description and pulled it over. (Lezamiz: 606-12) While he attempted to handcuff Cruz, Arroyo ran away, and Cruz pushed Sgt. Lezamiz and fled on foot. (Lezamiz: 619-21.) Soon after, officers apprehended both Arroyo and Cruz nearby. (Clark: 1023; Bellamore: SH187-88.) Meanwhile, Guererro and petitioner fled in their vehicle, as Sgt. Lezamiz fired four shots into their car. (Lezamiz: 621). As they drove down Sunrise Highway, a civilian driver, Mr. Welman, noticed a car driving erratically with bullet holes in the windshield, and called 911 to report it. (Welman: 1073). Welman continued to follow the vehicle and watched as Guerrero pulled to the side of the road and petitioner fled into an alley. (Welman: 1077). Petitioner stopped at a nearby bar, ordered a beer and called for a taxi. (Logan: 1582-3) Just after noon, officers apprehended petitioner in a taxi on the Southern State parkway. (Herman: SH 243; D'Alto: SH367)

On the Southern State parkway a few miles from the Sumra home, officers conducted a show up identification while petitioner was handcuffed standing between plainclothes officers.

3

(Lezamiz: 631-2; Herman 1355; A. Sumra 965.) Around 1:30 p.m., Sgt. Lezamiz arrived and identified petitioner as the individual who fled his attempted arrest earlier that day. (Lezamiz: SH40). Later that afternoon, officers separately brought Arshad Sumra to the parkway where he identified petitioner as the man who had invaded his home immediately telling officers, "That's him, 100%."(Ekstrom: SH 112.) Officers then brought petitioner to the police precinct. There, petitioner spoke with Detective John Espina, a Spanish-speaker, and he was read his Miranda rights. (Respondent's Response to CPL § 440 Motion Part 1, ECF No. 6, Attachment 15, Ex. 3: 56.) In response to being told that the detective would not question him if he requested to speak with an attorney, petitioner stated "Yes, I am asking to speak with a lawyer, right? A legal aid lawyer." Id. at 59. However, when Detective Espina clarified again that by requesting counsel, officers would no longer speak to him about the incident, he stated, "I am going to accept your conversation without a lawyer . . . I am not asking for a lawyer . . . I am a human being, I made a mistake, but I didn't commit a crime . . . I don't need a lawyer to defend myself." Id. at 59-62. Detective Espina interviewed petitioner eliciting a videotaped and written confession in which petitioner detailed his involvement in the home invasion and his subsequent escape. Id. at 37-9 (written confession); Id. 62-76 (transcript of videotaped confession).

## II.   Procedural History

Before trial, the Honorable Joseph C. Calabrese of the Supreme Court of New York, Nassau County conducted Dunaway, Huntley, Wade, and Mapp hearings over numerous days between April 12 to May 1, 2012 pursuant to a joint stipulation.[4] During those hearings, petitioner challenged: (1) the admissibility of his videotaped and written confession, (2) the probable cause for his arrest, (3) the admissibility of certain property petitioner discarded while evading arrest,

---

[4] References to the pre-trial suppression hearings ("SH"), filed at ECF No. 6, Attachments 19-20, include the last name of the witness and the transcript page number(s).

4

and (4) the show-up identification at the side of the road after petitioner's arrest. (Respondent's Response to CPL § 440 Motion Part 2, ECF No. 6, Attachment 16: Ex. 6, Page 46.) The court suppressed petitioner's confessions. (Respondent's Response to CPL § 440 Motion Part 2, ECF No. 6, Attachment 16: Ex. 6, Page 47.)[5] However, the court denied petitioner's other challenges ruling that there was probable cause for his arrest, petitioner's identification was not unduly suggestive, and that the prosecution could use the discarded property as evidence. Id. The court also granted petitioner's motion to sever his trial from his codefendants in the indictment. Id. [6]

The case was tried from March 4 to March 22, 2013 before a jury in Supreme Court, Nassau County. At the end of the trial, the jury found petitioner guilty on all counts[7] except criminal possession of a weapon in fourth degree (N.Y. Penal Law § 265.01) (TT: 1788). Petitioner was sentenced on May 7, 2013 to fifteen years of imprisonment and five years supervised release for each of the five counts of Robbery in the First Degree, ten years of imprisonment and five years supervised release for Robbery in the Second Degree, fifteen years of imprisonment and five years supervised release for each of the four counts of Burglary in the First Degree, one year of imprisonment for the three counts of Unlawful Imprisonment in the Second Degree, five years of imprisonment and three years supervised release for the two counts of Assault in the Second

---

[5] The original order suppressing petitioner's confession is not part of the instant record. However, petitioner does not dispute that his confession was suppressed, and the minutes of the suppression hearing have been provided. Moreover, petitioner's trial counsel, Dana Grossblatt, submitted an affirmation in connection with petitioner's C.P.L. § 440 motion which states, "I was able to successfully suppress the videotaped statement Mr. Segura made to the police." (Respondent's Response to CPL § 440 Motion Part 2, ECF No. 16: Ex. 6 Page 2.)

[6] Petitioner does not dispute that he was tried alone. However, he challenges his counsel's decision to sever his trial because it prevented the jury from seeing that his co-defendants were "white Caucasians, one with blond flaxen hair" rather than black males as witnesses described in the 911 calls. The government responds that none of his co-defendants were blond as evidenced by photographs introduced at trial. (Respondent's Brief, ECF No. 6: 19.)

[7] Petitioner was found guilty on five counts of robbery in the first degree (N.Y. Penal Law § 160.15) (TT: 1786-7), one count of robbery in the second degree (N.Y. Penal Law § 160.10) (TT: 1787), four counts of burglary in the first degree (N.Y. Penal Law § 140.30) (TT: 1787-8), three counts of unlawful imprisonment in the second degree (N.Y. Penal Law § 135.05) (TT: 1788-9), two counts of assault in the second degree (N.Y. Penal Law § 120.05) (TT: 1789), and one count of escape in the third degree (N.Y. Penal Law § 205.05) (TT: 1789).

Degree, and one year imprisonment for Escape in the Third Degree, all to run concurrently. (Sentencing: 9-14).

Petitioner appealed his conviction to the Appellate Division, Second Department and argued that (1) the trial judge improperly and unnecessarily injected himself into the trial by (a) sustaining at least one prosecution objection that was never made and (b) asking pointed questions of witnesses and directing commentary towards a witness, all favoring the prosecution, and that (2), the court erred in denying appellant's motion to suppress the in-court identifications because the identifications were unduly suggestive. (Brief for Appellant-Defendant, ECF No. 6, Attachment 1: Page 2.) The Appellate Division affirmed the conviction, finding that the hearing court properly denied suppression of the show-up identification and that the trial court was not biased. People v. Segura, 129 A.D.3d 871, 871 (N.Y. App. Div. 2nd Dep't. 2015). The New York Court of Appeals denied petitioner leave to appeal. People v. Segura, 26 N.Y.3d 971 (2015).

On January 22, 2016, petitioner moved to vacate the conviction pursuant to C.P.L. § 440 on the grounds of (1) actual innocence and (2) ineffective assistance of trial counsel. (Petitioner's C.P.L. § 440 Motion, ECF No. 14.) The Court denied petitioner's motion in its entirety finding, *inter alia*, that "the record clearly refutes mostly all of his claims of ineffective assistance of counsel." (C.P.L. § 440 Decision, Deligatti, J., (Apr. 25, 2016), ECF No. 14). On July 18, 2016, the Appellate Division denied petitioner's application for leave to appeal the denial of his C.P.L. § 440 motion. People v. Segura, 2016 N.Y. App. Div. LEXIS 8832 (2016). On November 9, 2016, the New York Court of Appeals again denied petitioner leave to appeal. People v. Segura, 2016 N.Y. LEXIS 3963 (2016). Petitioner timely filed the instant *pro se* petition for a writ of *habeas corpus* on November 23, 2016 pursuant to 28 U.S.C. § 2254.

6

**DISCUSSION**

I.  **Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a state court only on the ground the he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a *habeas* petition if the claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence present in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at an opposite result. Evans v. Fischer, 712 F.3d 125, 132 (2d. Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's cases." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. At 410; see also Grayton v. Ercole, 691 F.3d 165, 174 (2d. Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal *habeas* court may only "issue the writ in cases where the is

7

no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II. Petitioner's Claims

Petitioner raises two grounds for *habeas* review: (1) actual innocence and (2) ineffective assistance of trial counsel.[8]

Respondent argues that actual innocence is not cognizable on *habeas* review. Respondent also argues that petitioner's counsel was in fact highly effective, and that consequently, petitioner fails to show that the state court's decision was contrary to or an unreasonable application of clearly established Federal law. The Court agrees.

### A. Actual Innocence

Petitioner states that his "version of events differ vastly" and were ignored by the state court. (Petitioner's Brief, Ex. A1: 4). Although he submits no new evidence to the Court, petitioner

---

[8] Liberally construed, the instant petition could be read as raising an insufficiency of the evidence claim. However, petitioner did not raise this claim on direct appeal. (ECF No. 6, Attachment 1: Brief for Appellant-Defendant, Page 1.) Therefore, any claim for insufficiency of the evidence is unexhausted and barred from *habeas* review. See Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . thereby giving the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights. (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) (*per curiam*)"). Likewise, petitioner has not raised his show-up identification claim as a ground for *habeas* relief, but he did raise it on direct appeal. Although his identification claim would not be procedurally barred, it would nonetheless be denied as it is without merit. Petitioner's suggestive identification argument arises from Sgt. Lezamiz and Arshad Sumra's roadside identification while he was handcuffed after his arrest. (ECF No. 6, Attachment 1: Brief for Appellant-Defendant, Pages 25-6.) This Court cannot re-evaluate the merits of petitioner's suggestive identification argument; we may only consider whether the state court's decision denying relief was "contrary to" or an "unreasonable application" of Federal law. 28 U.S.C. § 2254(d). An out-of-court identification will only violate a defendant's due process rights if it creates "a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 198 (1972). While show-up identifications involving presentation of a single suspect by police are disfavored, see Stovall v. Denno, 388 U.S. 293, 302 (1967), not all show-up identifications are impermissible, especially when conducted by law enforcement immediately after an arrest to verify the identity of the detained person. See United States v. Bautista, 23 F.3d 726, 730 (2d. Cir. 1994) ("rather than excoriate the law enforcement officials involved for conducting an unduly suggestive procedure, one might commend them for their immediate efforts to ascertain and release innocent people); see also Briscoe v. Ercole, 565 F.3d 80, 92 (2d. Cir. 2009) (adopting the reasoning of Bautista on *habeas* review).

8

argues that he is a victim of racial profiling[9] and that he is not the person who carried out the crimes for which he has been convicted.

The Supreme Court has not resolved "whether a prisoner may be entitled to *habeas* relief based on a freestanding actual-innocence claim." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)); see also Moore v. Dempsey, 261 U.S. 86, 87-88 (1923) (Holmes, J.) ("What we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved.") The Supreme Court has only recognized actual innocence claims as an equitable "gateway through other procedural barriers" and required that such claims be "credible and compelling." Rivas v. Fischer, 687 F.3d 514, 516 (2d. Cir. 2012); see Schlup v. Delo, 513 U.S. 298, 324 (1995) (successive petitions). For example, "a credible and compelling showing" of actual innocence may provide an equitable exception to AEDPA's statute of limitations. Rivas, 687 F.3d at 518. Because the Supreme Court has never held that actual innocence is an independently cognizable ground for *habeas* relief, petitioner is not entitled to *habeas* relief.

However, even if actual innocence could serve as the basis to issue a writ of *habeas corpus*, petitioner here fails to make a "credible or compelling" showing. "Federal courts are not forums in which to relitigate state trials." Jackson v. Virginia, 443 U.S. 72, 90 (1979). In Rivas, the Second Circuit explained that "[f]or a claim [of actual innocence] to be 'credible,' it must be supported by 'new reliable evidence,'" 687 F.3d at 541 (quoting Schlup, 513 U.S. at 324) and "[f]or it to be "compelling" it must be 'more likely than not, in light of the new evidence, no reasonable juror would find [petitioner] guilty beyond a reasonable doubt.'" 687 F.3d at 541 (quoting House v.

---

[9] Petitioner writes that the officers involved in his case were "subject to racial phobias." (Petitioner's Brief, Ex. A1: 25). He describes his conviction as "pernicious, contemptuous racial profiling, at its worst, which taxed to the extreme, the intecracies *sic* of Nassau County Judiciary to cover up this blunder." (Petitioner's Brief, Ex. A1: 26).

9

Bell, 547 U.S. 518, 538 (2006)). Here, petitioner cites no evidence at all. Petitioner merely makes unsubstantiated allegations – some consistent with theories he unsuccessfully argued at trial, others new – meant to refute the version of events that the jury accepted.[10] As such, petitioner has failed to present a credible or compelling claim based on actual innocence – even if such a claim were cognizable on *habeas* review.

### B. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was constitutionally ineffective and that the New York State court's decision denying his C.P.L. § 440.10 motion was contrary to or an unreasonable application of clearly established Federal law, or alternatively, that the decision was unreasonable in light of the facts before the court.

To establish a Sixth Amendment ineffective assistance of counsel claim, petitioner must demonstrate both that: (1) counsel's performance was "deficient" as measured by an "objective standard of reasonableness," and (2) the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Considerable deference is accorded to counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690; see also Bierenbaum v. Graham, 607 F.3d 36, 50 (2d. Cir. 2010) (stating that the Strickland standard is "highly deferential" to eliminate the "distorting effects of hindsight"). To prevail on an ineffective assistance claim, petitioner must satisfy both of Strickland's prongs because otherwise

---

[10] For example, petitioner alleges that he was randomly pulled over by officers after going out to do painting and electrical work on Long Island. Petitioner's Brief, Ex. A1: 4. At trial however, the jury credited testimony adduced by the government from victims and witnesses identifying petitioner and his vehicle in connection with the home invasion. (Weiss: 690, A. Sumra: 863-4, H. Sumra: 1440). Multiple witness' 911 calls also identified the vehicle. (Weiss: 692; Smart: 562.) Likewise, petitioner alleges that the initial arresting officer "changed the license plate" on his car to match the tag described by a witness in a 911 call. However, the government produced evidence from the Pennsylvania Department of Motor Vehicles certifying that the license plate on the vehicle in question was registered under co-defendant Guerrero's name. (Respondent's Response to CPL § 440 Motion, ECF No. 6, Attachment 17:6).

10

"it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

A reviewing court should "assess counsel's overall performance" when evaluating a claim of ineffective assistance. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986). Where the result of a proceeding is neither unreliable nor fundamentally unfair as a result of counsel's performance, the court should find that petitioner was not prejudiced. See Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (rather than analyzing a proceeding only on its outcome, a court must consider whether the proceeding was fundamentally fair).

Petitioner's claim fails both prongs of Strickland. Petitioner neither demonstrates that he received constitutionally deficient counsel nor demonstrates prejudice. In deciding petitioner's C.P.L. § 440.10 motion, the Court stated "defense counsel did a stupendous job with the limited facts given to her." (C.P.L. § 440 Decision, Deligatti, J., (Apr. 25, 2016), ECF No. 14.) The court further stated that it was "unquestionable… that counsel for the defendant did provide meaningful representation." Id. Counsel advocated a number of issues on petitioner's behalf successfully. Counsel convinced the Court to suppress a videotaped and written confession taken by investigators on the day of the crime. Id.; (Respondent's Response to CPL § 440 Motion Part 2, ECF No. 6, Attachment 16: Ex. 6, Page 46). Doing so involved a substantial effort. Although petitioner first requested an attorney, he soon after told the officers: "I am going to accept your conversation without a lawyer…I am not asking for a lawyer…I am a human being, I made a mistake, but I didn't commit a crime…I don't need a lawyer to defend myself." (Respondent's Response to CPL § 440 Motion Part 1, ECF No. 6, Attachment 16: Ex. 3 Pages 59-62). In addition, counsel successfully moved to sever petitioner's case from his three co-defendants which, as she explained in a sworn affidavit, was designed to prevent their inculpatory confessions from being

11

used against petitioner. (Respondent's Response to CPL § 440 Motion Part 2, ECF No. 6, Attachment 16: Ex. 6 Page 2).

Petitioner's ineffective assistance of counsel claims are either without support or belied by the record. The trial record does not reflect that counsel was "unfocused, rambling…and dwelled on irrelevances," as petitioner alleges. (See Petitioner's Brief, Ex. A1: 10). Petitioner alleges that he was rushed into trial and sentenced to fifteen years after being pressured by counsel to reject a plea deal of eight years. (Petitioner's Brief, Ex. Al:12.) However, petitioner's trial counsel denies this in her affidavit and relates that petitioner voluntarily rejected a plea deal of eighteen years on numerous occasions, all in the presence of an interpreter. (Respondent's Response to CPL § 440 Motion Part 2, ECF No. 6, Attachment 16: Ex. 6, Page 47) In addition, the government notes the unreasonableness of this argument given that petitioner was charged with twenty violent felonies, for which an eight-year sentence is near the bottom of the five-year statutory minimum under New York Penal Law. (Respondent's Brief: 23). Petitioner refers to numerous instances of evidence that should have been suppressed, but petitioner had a full and fair opportunity to litigate these issues pre-trial. Although petitioner raises several unsubstantiated allegations about counsel, each of which the government has thoroughly addressed in its response, the Court finds that they are without merit. Accordingly, the state court's decision was not contrary to or an unreasonable application of clearly established Federal law. Moreover, the state court decision was not unreasonable in light of the facts. Therefore, petitioner's ineffective assistance of counsel claim should be denied.

## CONCLUSION

Accordingly, it is recommended that the instant petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial

of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112-3 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that for the purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

### FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                                           /S/
                                                       LOIS BLOOM
                                                       United States Magistrate Judge

Dated: December 17, 2019
       Brooklyn, New York